UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| J.A., THE MINOR STUDENT, <br> BY AND THROUGH S.A. and C.A., <br> THE STUDENT'S PARENTS, <br><br>    Plaintiffs, <br><br> v. <br><br> WILLIAMSON COUNTY BOARD OF <br> EDUCATION; and STATE OF <br> TENNESSEE DEPARTMENT OF <br> EDUCATION, <br><br>    Defendants. | No. 3:24-cv-00048 |

## MEMORANDUM OPINION

J.A., by and through his parents S.A. and C.A. (collectively, "Plaintiffs"), bring suit against Williamson County Board of Education ("WCS") and the State of Tennessee Department of Education ("TDOE"). (Doc. No. 1). This case arises out of alleged mistreatment of J.A. by WCS and the TDOE. Plaintiffs bring suit under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and the Fourteenth Amendment. Before the Court is the TDOE's Motion to Dismiss (Doc. No. 17), which has been fully briefed and is ripe for review (Doc. Nos. 17, 18, 29, 33). For the following reasons, the Court will grant the TDOE's motion.

I.   BACKGROUND AND FACTUAL ALLEGATIONS[1]

J.A. is a student who grew up and attended school in Los Angeles, California. (Doc. No. 1 ¶ 12). There, he was given an individualized education program ("IEP") at the beginning of his education in preschool. (Id. ¶ 13). J.A. continued receiving IEP services throughout elementary

---

[1] The Court draws the facts in this section from the Complaint (Doc. No. 1) and assumes the truth of those facts for purposes of ruling on the instant motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

school and was eventually diagnosed with attention-deficit/hyperactivity disorder ("ADHD"), was recognized as an auditory learner, and developed anxiety. (Id. ¶¶ 13–14). During J.A.'s fifth grade year, the Los Angeles Unified School District ("LAUSD") IEP team decided an appropriate education for J.A. would be in a smaller, non-public school, leading to J.A. being placed at Summit View West for his sixth grade year. (Id. ¶¶ 12, 15). J.A. spent his middle school years at Summit View West, where he had smaller class sizes, extra time, and a reader in accordance with his IEP. (Id. ¶ 16). He still struggled with his attention issues, learning disabilities, and anxiety, but Summit View West's small class sizes helped him progress socially and his anxiety improved. (Id.). During J.A.'s eighth grade year, J.A.'s LAUSD IEP team met to review his IEP, again finding J.A. should be placed in a non-public school setting for the ninth grade, and listed his instructional accommodations to include, among other things, a small class setting and extended school year ("ESY") services. (Id. ¶ 21).

In the spring of 2021, before the start of J.A.'s ninth grade year, Plaintiffs moved to Brentwood, Tennessee. (Id. ¶¶ 7, 12). In May 2021, S.A. registered J.A. to attend Brentwood High School ("BHS") and notified the BHS principal of J.A.'s IEP. (Id. ¶ 31). In August 2021, days before the 2021-2022 school year began, WCS, the legal entity charged with administering public education to students in Williamson County, Tennessee, and Plaintiffs had a phone call to discuss J.A.'s accommodations. (Id. ¶¶ 2, 37). WCS proposed two private schools, Genesis Academy ("Genesis") and High Road Academy, as comparable placements to Summit View West for J.A. (Id. ¶ 37). S.A. reached out to Genesis to discuss J.A.'s attendance there but found it unsuitable for J.A. because of Genesis's alleged lack of concern about whether its students matriculate to college. (Id.). Dissatisfied with the proposed placement options, S.A. and C.A. placed J.A. in private placement at Currey Ingram Academy ("Currey Ingram"). (Id. ¶ 39). Currey

2

Ingram offered J.A. individualized learning plans that would list his accommodations and track his progress; a degree that would allow him to go to a four-year college; and accommodations (like read aloud and no required state testing) that would not affect his diploma track. (Id. ¶ 39).

On August 20, 2021, S.A. and C.A. met with WCS to participate in an eligibility meeting for J.A. and to consider J.A.'s attendance at BHS. (Id.). There, WCS informed J.A.'s parents that BHS would use J.A.'s LAUSD IEP until WCS developed a new one, and stated J.A. was IDEA-eligible as of that day. (Id.). Eventually, WCS designed J.A. an IEP. (Id. ¶ 41). Although J.A.'s LAUSD IEP listed his accommodations to include, among other things, small class settings, ESY services, and a reader, WCS's IEP placed him in the general education setting at BHS, and did not provide for a read aloud accommodation, small class environment, or behavioral plan or specialist. (Id. ¶¶ 41, 48).

Convinced J.A. could not be served at BHS with the IEP WCS offered, C.A. and S.A. kept J.A. placed with Currey Ingram. (Id. ¶¶ 30, 78). Plaintiffs then filed a due process complaint against WCS with the state Administrative Law Judge ("ALJ"), alleging various claims against WCS regarding its failures to properly evaluate J.A., provide him with a suitable IEP at BHS, or propose sufficient alternatives to BHS. (Id. ¶ 8). The ALJ apparently ruled in WCS's favor, and Plaintiffs timely appealed by filing the instant action against the TDOE and WCS.[2] (Id. ¶ 6).

Plaintiffs assert IDEA claims against WCS and the TDOE—the state education agency responsible for ensuring local education agencies carry out IDEA mandates—and additional Fourteenth Amendment due process claims against the TDOE. (Id. ¶¶ 3, 66–77). In turn, Plaintiffs seek monetary, declarative, and injunctive relief. (Id. ¶ 78). To support their claims, Plaintiffs

---

[2] The Complaint does not state the ALJ's ruling in its Final Order, and WCS and the TDOE do not say otherwise. (See generally Doc. No. 1).

allege that they succeeded at proving their case before the ALJ but were not granted relief because they were not provided with a fair adjudication. (Id. ¶ 9). Plaintiffs raise various issues with their hearing before the ALJ, asserting the ALJ did not conduct any fact finding at the hearing, found facts not introduced at the hearing, and relied on conclusions of law made by another ALJ in another case. (Id. ¶¶ 9, 55–57). Plaintiffs further assert the TDOE failed to train, supervise, monitor, and evaluate the ALJs that hear special education due process cases, resulting in flawed decisions throughout Tennessee. (Id. ¶¶ 58, 60–63).

The TDOE has now filed a motion to dismiss the claims against it for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Doc. No. 17).

**II. DISCUSSION**

The TDOE asserts all of Plaintiffs' claims against it must be dismissed for four reasons: (1) Plaintiffs' Fourteenth Amendment due process claims are barred by the Eleventh Amendment; (2) Plaintiffs lack standing to assert the relief requested; (3) Plaintiffs failed to exhaust the administrative process prior to filing suit; and (4) Plaintiffs have not alleged a plausible claim for relief for systemic violations. (Doc. No. 18 at 1). As an initial matter, Plaintiffs concede that their Fourteenth Amendment due process claims are barred by the Eleventh Amendment and abandon them. (Doc. No. 29 at 110).[3] Accordingly, those claims against the TDOE will be dismissed. The Court will address the remaining issues in turn.

    1. <u>Subject Matter Jurisdiction</u>

The parties dispute whether Plaintiffs have Article III standing to bring their IDEA claims against the TDOE. "When a motion [to dismiss] is based on more than one ground, the court

---

[3] Plaintiffs did not number their opposition, as required by the Local Rules. See M.D. Tenn. L.R. 7.03(a) (documents for filing must have all pages "numbered at the bottom"). For the purposes of the Court's decision, the Court will refer to the PageID number when citing to the opposition.

should consider the Rule 12(b)(1) challenge first since, if it must dismiss the complaint for lack of subject matter jurisdiction, the other defenses and objections become moot and need not be determined." Mich. State Emps. Ass'n v. Marlan, 608 F. Supp. 85, 87 (W.D. Mich. 1984); see also Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). And "where subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986); see Abbot v. Michigan, 474 F.3d 324, 328 (6th Cir. 2007).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)). A facial attack goes to whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis. Ritchie, 15 F.3d at 598. A factual attack challenges the factual existence of subject matter jurisdiction. Id. In the case of a factual attack, the court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists. This may include evidence outside of the pleadings, and the Court may weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. Id. Here, the TDOE makes a facial challenge, so the Court limits its consideration to the allegations of the Complaint and assumes them to be true. (Doc. No. 18 at 6–8).

A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). See Stalley v. Methodist Healthcare, 517 F.3d 911, 916 (6th Cir. 2008) (referring to a "lack of standing" as a "lack of subject matter jurisdiction"). "[T]he irreducible constitutional minimum of standing

5

contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (internal citations omitted). The plaintiff has the burden of satisfying all three prongs "separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

### A. The First Prong of Standing: Injury in Fact

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). Where a plaintiff alleges injunctive or declaratory relief, "an allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (internal citation and quotations omitted). Such relief may also be supported by allegations of a past injury that has "continuing, present adverse effects." Sullivan v. Benningfield, 920 F.3d 401, 408 (6th Cir. 2019). And "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement," "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Duke Power Co. v. Carolina Env't. Study Grp., Inc., 438 U.S. 59, 80 (1978) (internal citation and quotations omitted).

Moreover, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," where the violation "entail[s] a degree of risk sufficient" to indicate a resulting concrete harm. Spokeo, 578 U.S. at 342; see also Heldman v. Sobol, 962 F.2d 148, 154 (2d Cir. 1992) ("Congress may create a statutory right the alleged violation of which constitutes injury in fact."). A plaintiff in such a case "need not allege any *additional* harm beyond

6

the one Congress has identified." Spokeo, 578 U.S. at 342.  The Court is not aware of, and the parties do not cite to, any Sixth Circuit precedent as to whether an injury to a procedural right under the IDEA constitutes an injury in fact.  However, the Second Circuit has held it does. Heldman, 962 F.2d at 154 ("Congress intended to create [IDEA] procedural rights, the violation of which would constitute an injury in fact."); see also S.W. v. New York City Dep't of Educ., 646 F. Supp. 2d 346, 358 (S.D.N.Y. 2009) ("The denial of. . . a procedural right created by the IDEA. . . constitutes an injury sufficient to satisfy the standing requirement.").  Indeed, the IDEA's

> procedural guarantees ... serve not only to guarantee the substantive rights afforded by the Act; the procedural rights, in and of themselves, form the substance of IDEA. Congress addressed the problem of how to guarantee substantive rights to a diverse group by relying on a process-based solution. Thus, Congress envisioned that compliance with the procedures set forth in IDEA would ensure that children with disabling conditions were accorded a free public education. The central role of the IDEA process rights bears witness that Congress intended to create procedural rights the violation of which would constitute an injury in fact.

Heldman, 962 F.2d at 154; see Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 205–06 (1982) (noting "the congressional emphasis upon full participation of the concerned parties throughout the development of the IEP" demonstrates that "adequate compliance with the procedures prescribed" would "assume much if not all of what Congress wished in the way of substantive content in an IEP").  Accordingly, the denial of a free appropriate public education ("FAPE") or of an impartial due process hearing about IDEA-related concerns constitutes an injury in fact for standing purposes. Heldman, 962 F.2d at 154–56; see also Melendez v. New York City Dep't of Educ., 420 F. Supp. 3d 107, 117 (S.D.N.Y. 2019).

The parties disagree as to whether Plaintiffs have demonstrated the first prong of standing, Plaintiffs suffering an injury in fact.  Defendants contend that Plaintiffs do not allege an injury in fact because they do not allege they were "personally aggrieved by determinations [of the ALJs] in other cases," nor do they allege "ongoing or future harm" to seek injunctive or declaratory relief.

7

(Doc. No. 18 at 7–8). Plaintiffs counter that they suffered a violation of their protectable "due process right (Procedural Safeguards) guaranteed in the IDEA" when TDOE abdicated "its responsibilities under the IDEA," and that the TDOE's statutory violation: (1) injured J.A. by denying him a FAPE, and (2) injured C.A. and S.A. by imposing additional financial hardship on them to provide J.A. with an appropriate education.[4] (Doc. No. 29 at 113).

What neither party addresses directly, but is pertinent to this Court's standing analysis, is whether Plaintiffs have suffered a violation of a procedural right under the IDEA sufficient to establish requisite injury. While Plaintiffs do not explicitly argue their IDEA procedural right being violated suffices to establish an injury in fact, they do argue they have a right to "an impartial due process hearing" under 20 U.S.C. § 1415(f)(1)(A) that they were deprived of. (Doc. No. 29 at 112–13). Defendants do not contest this. (Doc. No. 33 at 2). Plaintiffs' alleged injury to their right to an impartial due process hearing is the exact IDEA due process right found in Heldman to constitute a procedural injury sufficient to satisfy the first prong of standing. 962 F.2d at 155 (a deprivation of the § 1415 right to an impartial hearing officer is an actual injury). The Complaint adequately pleads Plaintiffs suffered harm to this procedural right, alleging Plaintiffs "were not provided a fair adjudication" because the ALJ's order was a "cut and paste job" from a prior ruling, a practice that deprives "parents and students of a fair, impartial hearing result." (Doc. No. 1 ¶ 9).

Although Plaintiffs need not sufficiently plead more to establish their procedural injury, Heldman, 962 F.2d at 154, they do also allege J.A. suffered concrete harms through substantive

---

[4] Plaintiffs' argument that S.A. and C.A. have an injury in fact stemming from their "financial hardship" confuses actual injury, pertinent to the standing analysis, and the request for relief Plaintiffs seek. (See Doc. No. 29 at 113–14 (citing to the Complaint's request for relief to establish financial injury for standing)). Given the Complaint contains no allegations pertaining to an injury in fact of this nature with respect to the TDOE, the Court disposes of this argument as meritless and considers S.A. and C.A.'s financial harm only with respect to the relief sought.

8

Case 3:24-cv-00048    Document 51    Filed 09/23/24    Page 8 of 20 PageID #: 2982

deprivations of a FAPE, i.e., the WCS IEP not providing J.A. small class settings, extended school year services, or read aloud accommodations, Spokeo, 578 U.S. at 342. (Doc. No. 1 ¶¶ 8, 41, 51). Plaintiffs assert they raised these issues with J.A.'s IEP in their due process complaint against WCS, which was allegedly unfairly adjudicated. (Id. ¶¶ 8–9). Taking Plaintiffs' allegations to be true—as we are required to do in reviewing dismissal for lack of standing, Ritchie, 15 F.3d at 598—these allegations sufficiently demonstrate an actual, concrete, and particularized injury to Plaintiffs' procedural rights and J.A.'s right to a FAPE under the IDEA. See Heldman, 962 F.2d at 155–56 ("Congress. . . conferred on the parents of disabled children an enforceable legal right to an impartial hearing officer. If Heldman's allegations are correct, the New York system of selecting hearing officers. . . denied him his due process rights under IDEA and resulted in actual injury.").

However, the Court agrees with the TDOE that to the extent Plaintiffs attempt to assert injuries on behalf of other students, or assert injuries seeking relief for future harms or past ongoing harms, they do not have standing to do so. The Complaint references three allegedly faulty due process hearings unrelated to Plaintiffs (Doc. No. 1 ¶¶ 59–62) and seeks at least two forms of injunctive relief to remedy those harms. (Id. ¶¶ 78(H), (I)). Plaintiffs' request for standing to assert these injuries and corresponding requests for relief are improper because Plaintiffs, at least in part, rest their claims to relief on the legal rights and interests of those three other students. Duke Power Co., 438 U.S. at 80. Further, Plaintiffs' contention in their *briefing* that their asserted injuries are "ongoing because they have not been fairly or properly addressed" fails because the Complaint itself contains no allegations that Plaintiffs have any past injury that has "continuing. There are no present adverse effects" on Plaintiffs, Sullivan, 920 F.3d at 408, or any future injury that is "certainly impending" or will create a "substantial risk" that harm will occur, Susan B.

Anthony List, 573 U.S. 158. (See generally Doc. No. 1). For those reasons, Plaintiffs do not have standing to bring their IDEA claims to the extent they call for declaratory or injunctive relief, and those claims will be dismissed.

## B. The Second Prong of Standing: Causation

To establish standing, a plaintiff must also demonstrate a "causal connection between the injury and the conduct complained of." Durham v. Martin, 905 F.3d 432, 434 (6th Cir. 2018) (internal citation and quotations omitted). But the defendant's conduct need not have a "close connection" to the plaintiff's injury; rather, it need only be "fairly traceable" to the alleged injury. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 133 (2014). The plaintiff also must show that the alleged injury is not "th[e] result [of] the independent action of some third party not before the court." Durham, 905 F.3d at 434 (internal citation and quotations omitted).

Plaintiffs argue there is a sufficient causal connection between their injuries and the TDOE's inaction, asserting that "[a]s a direct result of the abdication of his IDEA-mandated duties, the [ALJ] failed" to "render a meaningful, independent decision" and "Plaintiffs would not continue to be deprived of FAPE" had the TDOE properly "fulfilled its IDEA obligations." (Doc. No. 29 at 114). The TDOE does not contest this. (Doc. Nos. 18, 33). Here, Plaintiffs allege facts sufficiently demonstrating the TDOE's alleged "systemic" inaction in failing to "provide impartial, properly trained hearing officers to hear Plaintiffs due process complaints" resulted in a violation of Plaintiffs' due process rights and J.A.'s denial of a FAPE. (Doc. No. 29 at 113–14).

The Complaint alleges all the links tying the TDOE's inaction and Plaintiffs' harms together. First, the Complaint alleges Plaintiffs raised the inadequacy of J.A.'s accommodations in their due process complaint against WCS. (Doc. No. 1 ¶ 8). Next, the Complaint asserts that during their due process hearing, the ALJ: failed to do sufficient fact finding, found facts not in the record, and applied conclusions of law from another ALJ. (Id. ¶¶ 55–57). Plaintiffs further

10

contend the ALJ's order from that hearing was "a feckless cut and paste job from a prior ruling," (id. ¶ 9; see id. ¶ 63). Accordingly, the Complaint alleges "Plaintiffs were not provided with a fair adjudication." (Id. ¶ 9). The Complaint asserts the TDOE "is responsible" for providing an impartial due process hearing, (id. ¶ 10), and that these "cut and paste jobs" are a result of the TDOE's inaction, in that it "failed to train, supervise, monitor or evaluate a team of hearing officers that hear special education due process cases." (Id. ¶ 58).

It is true that this line of allegations may not provide a "close connection" between the TDOE's allegedly systemic inaction and Plaintiffs' injuries, particularly given the ALJ is credited with directly creating Plaintiffs' harms. Still, these allegations are sufficient to fairly trace Plaintiffs' harms stemming from the ALJ allegedly mishandling Plaintiffs' due process hearing to the TDOE's failures to train, supervise, monitor and evaluate its ALJs. See Heldman, 962 F.2d at 156 (holding parents demonstrated the denial of their child's right to an impartial due process hearing stemming from actions of a biased hearing officer was caused by the Commission of Education's system pertaining to hearing officers). The Court therefore finds Plaintiffs have sufficiently alleged that TDOE's alleged inaction caused the denial of Plaintiffs' rights to an impartial due process hearing and resultant denial of J.A.'s right to a FAPE for the purposes of standing. Spokeo, 578 U.S. at 338.

### C. The Third Prong of Standing: Redressability

To satisfy the last prong of standing, a plaintiff must allege that a favorable decision would address their injury. Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). In the case where, like here, a plaintiff has suffered a procedural injury, the plaintiff need not meet "all the normal standards for redressability and immediacy." Massachusetts v. E.P.A., 549 U.S. 497, 517–18 (2007) (internal citation omitted). When a litigant is vested with a procedural right, that litigant

11

Case 3:24-cv-00048    Document 51    Filed 09/23/24    Page 11 of 20 PageID #: 2985

has standing if there is "some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." Id. (internal citation omitted).

Here, Plaintiffs' only remaining relief they have standing to assert is compensatory relief for past harms, see supra, Section II.1.A. (Doc. No. 1 ¶ 78). The TDOE fails to respond to Plaintiffs' argument that because of their educational harm, they had paid for a private school placement for J.A. and seek reimbursement for "privately expended educational supports" and "transportation to and from Currey Ingram." (Doc. No. 29 at 114; Doc. No. 33 at 2; Doc. No. 1 ¶ 78). The Court finds an order for the TDOE to provide this compensatory relief would clearly benefit Plaintiffs personally and would prompt the TDOE to "reconsider" its alleged inaction that harmed Plaintiffs. Massachusetts, 549 U.S. at 517–18. Therefore, Plaintiffs have standing to pursue their IDEA claims for the past harms tied to Plaintiffs' requests for compensatory relief.

2. Exhaustion

Among the parties' remaining disputes is whether Plaintiffs' IDEA claims are subject to the IDEA's exhaustion requirements. The TDOE does not specify whether it moves to dismiss on this issue under Rule 12(b)(1) or Rule 12(b)(6). (Doc. No. 18 at 9–10; Doc. No. 33 at 3–4). The Sixth Circuit has not decided whether administrative exhaustion under the IDEA is a jurisdiction requirement. L.G. by & through G.G. v. Bd. of Educ. of Fayette Cnty., 775 F. App'x 227, 231 n.3 (6th Cir. 2019) ("This circuit has not determined whether exhaustion under the IDEA is a jurisdictional requirement.") (citing Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ., 655 F. App'x 423, 430–31 (6th Cir. 2016)). It has, however, twice implied otherwise. Li v. Revere Local Sch. Dist., 2023 WL 3302062, at *10 (6th Cir. May 8, 2023). The Court will therefore address the TDOE's exhaustion argument under Rule 12(b)(6).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). And "[w]hile the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or "a formulaic recitation of a cause of action's elements[.]" Blackwell, 979 F.3d at 524 (internal quotations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

It is well settled that plaintiffs seeking to enforce their rights under the IDEA "must exhaust their administrate remedies before bringing suit in federal court to obtain relief that is also available under the IDEA." Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 915 (6th Cir. 2000), amended on denial of reh'g (May 2, 2000); see 20 U.S.C. § 1415(i)(2). Administrative exhaustion procedures are required because "[t]he federal courts are not the entities best equipped to craft an IEP or remedial substitutes. They are, instead, suited to reviewing detailed administrative records, such as those that would be furnished through due process hearings[.]" Long v. Dawson Springs Indep. Sch. Dist., 197 F. App'x 427, 434 (6th Cir. 2006); see Bowen v. City of New York, 476

U.S. 467, 484 (1986) (exhaustion is generally required "so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review").

Courts have recognized four narrow exceptions to the IDEA's administrative exhaustion requirement. Plaintiffs may bypass administrative exhaustion when: "(1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm." M.M. v. Paterson Bd. of Educ., 736 F. App'x 317, 319–20 (3d Cir. 2018) (internal citation omitted); Donoho ex rel. Kemp v. Smith Cty. Bd. of Educ., 21 F. App'x 293, 297 (6th Cir. 2001). While "[a]dministrative remedies are generally futile or inadequate when plaintiffs allege 'structural or systemic failure and seek statewide reforms[,]'" Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1, 89 F.3d 720, 725 (10th Cir. 1996) (internal citations omitted), the Sixth Circuit has not recognized a separate exception to the exhaustion requirement hinging only on the nature of the plaintiff's allegations. See F.C. v. Tenn. Dep't of Educ., 745 F. App'x 605, 609 (6th Cir. 2018) ("[W]e doubt that a plaintiff is exempt from the IDEA's exhaustion requirement just because he paints the allegations in his complaint as broadly applying to all students."); W.R. v. Ohio Health Dep't, 651 F. App'x 514, 521 (6th Cir. 2016) (The plaintiff's "claims of systemic violations. . . are subject to the IDEA's exhaustion requirement."). One thoughtful case from this district opined that in determining whether a plaintiff alleges a systemic problem likely to demonstrate actual futility or inadequacy of the administrative process, the court should consider:

> "whether the plaintiffs, artful pleading aside, have presented a broad, policy-level problem, for which it would be a waste of time to go through the administrative process, or whether they have presented what is, at its core, a context-dependent, student-specific problem that is better addressed by—and stands a meaningful

14

Case 3:24-cv-00048  Document 51  Filed 09/23/24  Page 14 of 20 PageID #: 2988

chance of resolution by—the experts on the ground, even if there may be other students suffering from similar alleged deprivations."

L.L. By & Through B.L. v. Tennessee Dep't of Educ., 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019). Whether exhaustion is required is a question of law. Parent/Pro. Advoc. League v. City of Springfield, Massachusetts, 934 F.3d 13, 24 n.8 (1st Cir. 2019) ("Our review of the district court's exhaustion ruling is de novo."). The burden of demonstrating futility or inadequacy rests on the party seeking to bypass the administrative process. F.C., 745 F. App'x at 608 (citing Covington v. Knox Cty. Sch. Sys., 205 F.3d 912, 917 (6th Cir. 2000)).

Here, Plaintiffs assert the first exception to the exhaustion requirement applies, in that it would be futile to exhaust their IDEA claims. M.M., 736 F. App'x at 319–20. Plaintiffs assert that exhaustion is futile "because the issue [with the administrative process] is systemic" and "given that inadequacies in the administrative process itself form the basis of Plaintiffs' claims." (Doc. No. 29 at 119). Defendants contend Plaintiffs' failure to exhaust their administrative remedies warrants dismissal of their IDEA claims because: (1) the Sixth Circuit has not recognized a separate exception to the exhaustion requirement based only on the systemic nature of the allegations; (2) Plaintiffs did not allege any deficiencies with the TDOE's established due process procedures; and (3) Plaintiffs cannot show allowing the TDOE to address any alleged failures through the administrative process would be futile. (Doc. No. 18 at 9–10; Doc. No. 33 at 3–4). The Court agrees with the TDOE that Plaintiffs are required to exhaust their claims before bringing them to federal court.

Plaintiffs do not carry their burden to establish that the supposed systemic issues with the administrative process make exhaustion futile. Donoho ex rel. Kemp., 21 F. App'x at 297. To support their contention that exhaustion is futile under these circumstances, Plaintiffs heavily rely on J.A. v. Monroe Twp. Bd. of Educ., an unpublished, non-binding district court case. 2019 WL

15

1760583 (D.N.J. Apr. 22, 2019). In J.A., the plaintiffs asserted punitive class action claims based on their contention that the New Jersey Department of Education's ("NJDOE") system for resolving special education disputes in New Jersey violated the IDEA by systemically and routinely violating the rights of all class members. Id. at *5. Specifically, plaintiffs alleged the defendants created two systemic issues with the NJDOE system when it selected the Office of Administrative Law ("OAL") to handle IDEA disputes. First, the defendants failed to ensure the IDEA's procedural requirement that all cases be decided within 45 days by using the OAL to handle IDEA complaints, despite learning eight years prior that the average case brought to the OAL pursuant to the IDEA took 312 days to be adjudicated, and the OAL had made no steps to remedy its noncompliance. Second, the nature of the OAL denied students FAPEs because it had a limited number of ALJs, all of whom had little or no training in special education law or the provisions of the IDEA, and had conflicts of interest because of their salaries coming from the OAL. Id. at *6–7. The class action plaintiffs contended they, and all others similarly situated, suffered harm from those systemic issues and sought an array of equitable and legal remedies. Id. at *7. Under those circumstances, the district court found the plaintiffs did not need to exhaust their administrative remedies against the defendants for their systemic claims that could not be redressed through the administrative process because that exact process was at issue. Id.

This case is different. To be sure, Plaintiffs make various conclusory allegations asserting the shortcomings of the hearing process the TDOE oversees. (See, e.g., Doc. No. 1 at ¶ 55 ("The state hearing officer abated doing any fact finding on multiple issues raised in the complaint at the hearing."), ¶ 56 ("The state hearing officer further found facts that literally were not in existence."), ¶ 57 ("The conclusions of law are not the conclusions of the state hearing officer, but were instead the conclusions made by another hearing officer[.]"), ¶ 61 ("In another case this District Court

16

admonished one hearing officer in a remand where the hearing officer copied and pasted nearly entirely a proposed order offered by Defendant[.]"), ¶ 62 ("Recently in another case in the Western District of Tennessee a student's decision was a merged cut and paste job of three prior decisions.")). But the central issue Plaintiffs raise with the TDOE is that it "has failed to train, supervise, monitor or evaluate a team of hearing officers that hear special education due process cases." (Id. ¶ 58). Plaintiffs contend "[t]his has resulted [in] numerous decisions throughout the state of Tennessee that were recently discovered to be cut and paste jobs from other decisions" and proceed to cite to three other instances of ALJs supposedly copying and pasting from prior decisions. (Id. ¶¶ 58–62). Plaintiffs assert "[t]his is a systemic problem with the TDOE's hearing process." (Id. ¶ 60).

Even taking all of Plaintiffs' allegations as true, these statements consisting largely of labels and conclusions are insufficient to show a systemic issue. Ritchie, 15 F.3d at 598; Blackwell, 979 F.3d at 524. Plaintiffs' general complaints that the TDOE failed to "train, supervise, monitor or evaluate" ALJs do not come close to resembling the systemic issue raised by the class action plaintiffs in J.A. There they alleged the OAL oversaw ALJs that were understaffed, did not receive specialized training in IDEA provisions or educational law, and were biased due to the structure of the OAL payment system. J.A., 2019 WL 1760583, at *6–7; see Urban, 89 F.3d at 725; M.M., 736 F. App'x at 320. Nor do these allegations of, at most, four ALJs copying and pasting from prior opinions amount to the allegations in J.A. that every single ALJ handling IDEA cases was unqualified and biased because of the OAL's inherently flawed system. J.A., 2019 WL 1760583, at *6–7. Perhaps most telling, and unlike in J.A., the Complaint contains no allegation that the alleged "systemic" issue has denied all students similarly situated to J.A. a FAPE. Id.; see also M.M., 736 F. App'x at 320.

17

Case 3:24-cv-00048   Document 51   Filed 09/23/24   Page 17 of 20 PageID #: 2991

Rather, the basis for liability in this case is WCS's, and subsequently the TDOE's, failure to provide proper special education services for one child, J.A. Plaintiffs present a context-specific problem that occurred during their administrative hearing process, where the ALJ copied and pasted conclusions of law in its decision from another case, and then assert this same issue may have impacted a handful of other students. See L.L., 2019 WL 653079, at *6. Artful pleading aside, those ALJs' copying and pasting conclusions of law from prior opinions does not demonstrate a policy-level problem with the administrative process depriving students of their IDEA rights. Such that exhaustion would invariably be futile should Plaintiffs wish to pursue their claims against the TDOE. Rather, Plaintiffs show a possible situational error that is easily correctable upon Plaintiffs' notice of the issue through exhausting their claims against the TDOE. Bowen, 476 U.S. at 484 (exhaustion allows agencies to correct their own errors). Plaintiffs demonstrate, at most, that they had a negative experience with one ALJ. And as the Court explained above, that is all Plaintiffs have standing to seek relief for. See supra, Section II.1. Further, Plaintiffs' argument that exhaustion is futile because of the nature of their claims involving the inadequacies of the administrative process relies on the flawed assumption that these alleged inadequacies are indeed systemic. (Doc. No. 29 at 119). As discussed above, Plaintiffs have not carried their burden in showing a systemic issue is present here such that Plaintiffs will surely get an unqualified ALJ should they exhaust their claims. Covington, 205 F.3d at 917.

Further, the Court is not convinced by Plaintiffs' argument that the second prong of the first IDEA exhaustion exception, that the administrative process would be inadequate to protect their rights, applies. M.M., 736 F. App'x at 319–20; Covington, 205 F.3d at 917. In two sentences, Plaintiffs assert "multiple federal courts in Tennessee have held that exhaustion is not required when the claims cannot be adequately addressed by a hearing officer" and "[ALJs] are not

equipped or authorized to provide retroactive relief for systemic violations." (Doc. No. 29 at 29). These general arguments fail to address what specific relief or claims Plaintiffs contend cannot be adequately addressed by the ALJ. See M.M., 736 F. App'x at 320 (exhaustion required where plaintiff did not demonstrate administrative process is unable to provide an appropriate remedy for the harms alleged). Plaintiffs do not have standing to seek injunctive or declaratory relief. See supra, Section II.1. Plaintiffs therefore do not establish exhaustion would be inadequate. M.M., 736 F. App'x at 320.

The Court acknowledges exhaustion in this case may not be the most judicious use of the parties' time. But to allow Plaintiffs' claims against the TDOE to go forward would suggest a perverse message to future IDEA plaintiffs that general complaints with the administrative hearing process will absolve them of exhaustion requirements. This is antithetical to the IDEA and contrary to Sixth Circuit instruction. F.C., 745 F. App'x at 609. Further, should Plaintiffs choose to exhaust their claims against the TDOE, they will benefit from administrative exhaustion, because it will allow Plaintiffs to develop a factual record detailing exactly how the TDOE prevented J.A. from obtaining a FAPE and will allow the Administrative Procedures Division to correct its own errors, should any be found. See Long, 197 F. App'x at 434 (federal courts "are not the entities best equipped to craft an IEP or remedial substitutes"); Bowen, 476 U.S. at 484.

Because Plaintiffs have failed to exhaust their administrative remedies under the IDEA to pursue their claims against the TDOE, the Court will grant the TDOE's Rule 12(b)(1) and (6) motion to dismiss, and, consistent with the above and the parties' agreement that Plaintiffs' Fourteenth Amendment claims are barred (Doc. No. 18 at 5–6, Doc. No. 29 at 110), all of Plaintiffs' claims against the TDOE will be dismissed. Because the Court must dismiss all the

IDEA claims against the TDOE in the Complaint, all the TDOE's other Rule 12(b)(6) objections and Plaintiffs' other defenses are moot and need not be determined.

## III. CONCLUSION

For the foregoing reasons, the TDOE's Motion to Dismiss (Doc. No. 17) will be granted, and the claims against the TDOE will be dismissed without prejudice.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE